# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5287-16T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

G.R.,

     Defendant-Appellant.

_____

IN THE MATTER OF N.B. and L.B.,

     Minors.

_____

Submitted March 13, 2019 – Decided April 4, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0109-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth H. Smith, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Viviane C. Sullivan, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant G.R. appeals from a Family Part order, entered after an evidentiary hearing, finding he abused or neglected L.B. (Laura),[1] the ten-month-old daughter of his paramour, A.B. (Ann), by causing Laura numerous orthopedic injuries while she was in his care. We affirm.

I.

In response to a February 11, 2016 referral from the Paterson Police Department, the New Jersey Division of Child Protection and Permanency (Division) learned that Laura had been transported to the hospital from the home she shared with Ann, defendant and her two-year-old sibling, N.B. (Nate). X-rays revealed Laura suffered an elbow fracture, tibia fractures, a fibular fracture in two parts, a shoulder fracture, and a femur facture. Laura also had multiple bruises on her face, and it was determined she suffered from a lacerated liver.

---

[1] We employ initials and pseudonyms to protect the privacy of the children.

The Passaic County Prosecutor's Office commenced an investigation of the cause of Laura's injuries, and the Division effected an emergency removal of Laura and Nate from Ann and defendant's care.

Five days later, the Division filed a verified complaint for custody, care and supervision of the children against Ann, defendant, and the children's biological father, S.B. In pertinent part, the complaint asserted a claim under Title 9, N.J.S.A. 9:6-8.21 to -8.73, that defendant, Ann and S.B. abused or neglected Laura and Nate in February 2016. The court subsequently dismissed the complaint against S.B. because there was no evidence he was present or involved with the care of the children when the alleged abuse occurred.

On November 15, 2016, Ann stipulated to the entry of an order finding she abused or neglected the children by leaving them in the inadequate supervision of defendant. Ann further stipulated defendant was the children's caretaker from February 5, 2016, through February 10, 2016, and caused Laura "to suffer severe and numerous injuries . . . including but not limited to [a] lacerated liver, multiple fractures and numerous bruises."[2]

---

[2] Following Ann's compliance with services, she was reunited with the children and the litigation against her was terminated.

A-5287-16T3

The Family Part conducted a trial on the complaint against defendant. The trial focused on the nature and extent of Laura's injuries, the time frame during which the injuries were inflicted, and the identities of the individuals who had access to or cared for Laura when she sustained her injuries.

Prior to the presentation of the evidence, the court first reviewed with counsel a twenty-two-page document, "PRELIMINARY STATEMENT OF FACTS/STIPULATIONS," the Division provided in accordance with a pretrial case management order directing that the parties provide proposed stipulations of fact.[3] During its colloquy with counsel, the court carefully reviewed the proposed stipulations, counsel agreed to all but five of them,[4] and the court explained it would accept the agreed upon stipulations as such.

---

[3] The document was not marked as an exhibit or introduced in evidence at trial. The document, however, is part of the record on appeal. We granted the Law Guardian's unopposed motion to supplement the record with the document. None of the parties disputes that the document contains the stipulations the court reviewed in detail with counsel on the first day of trial.

[4] Counsel rejected only the following proposed stipulations: those numbered eight, seventeen and eighteen; the summary of Ann's interview with Kimberly Hackaspker and Dr. Lopez at St. Joseph's Hospital; and that seven photographs and videos "extracted from [Ann's] cellular number were taken on the date displayed on each."

4

In addition to the stipulations, the court heard testimony presented by the Division's three witnesses: Tara Horn, a Division intake supervisor; O.G., Laura's maternal great-grandmother; and Dr. Benjamin Taragin, who was qualified to testify as an expert in pediatric radiology.

Dr. Taragin testified Laura suffered "multiple fractures of multiple bones, including bilateral tibia, one of the fibulas, the elbow, the scapula, and the clavicles. One of the bones was actually fractured in two locations."

More particularly, Dr. Taragin explained Laura had tibia fractures in both of her legs, the "severity of these fractures is extreme and could not be generated by any force that this child would be able to generate on [her] own," and that the fractures were "the result of significant force applied." He also noted that Laura suffered a fractured fibula, but that "could be seen in a child this age from a jump or ambulation."

Dr. Taragin further testified that Laura's shoulder blade fracture is, for someone her age, pathognomonic for non-accidental trauma, meaning it is "as close to 100 percent caused by non-accidental trauma as possible." He explained that absent evidence of a high speed car accident or a large person falling on the child and compressing the bone, such an injury is indicative of non-accidental injury.

A-5287-16T3

Dr. Taragin also explained that a "very significant amount of force" was required to cause the fracture of Laura's humerus, including "direct blunt trauma or a significant squeeze and—and twist," as indicated by the amount of displacement seen in her x-rays.

Dr. Taragin further explained the radiographic images allowed an assessment of the age of the fractures and the stage of their healing, and testified about when the injuries were inflicted. For example, Dr. Taragin reviewed a February 4, 2016 video recording of Laura crawling and testified it was his "expert medical opinion that there's absolutely no way that a child with the amount of fractures that [Laura] had at presentation would be able to crawl with those fractures on that date." He opined that Laura therefore suffered her injuries between February 4, 2016, and February 11, 2016, when her injuries were discovered at the hospital.

Division intake supervisor Tara Horn testified that between February 1, 2016, and February 11, 2016, Laura resided with Ann, defendant, Laura's maternal grandmother, M.G., and Ann's cousin, T.P. In addition, Laura's great-grandmother, O.G., watched the children during that period of time.

However, Ms. Horn's testimony and the parties' stipulations established T.P. was out of the country between February 3, 2016, and February 11, 2016,

and that M.G. moved out of the home on February 8, 2016, and "rarely" watched the children. O.G. last watched the children on February 4, 2016, and Laura had no marks or bruises on her face or body at that time.

The stipulations further established that although Ann and defendant were responsible for caring for Laura during the relevant time period, Laura was left alone with defendant on February 5, 2016, and Ann noticed bruising on the child's back that day. Ann took Laura to the pediatrician on February 8, 2016, but did not report the bruising. Laura was cared for exclusively by defendant on February 9, 2016, and until 1:00 p.m. on February 10, 2016, when defendant left Laura at his mother's home. The parties stipulated that at the time Laura arrived at defendant's mother's home, she already had bruises on her body and hair missing from her scalp.

At the conclusion of the Division's case, the court made detailed findings supporting its determination that the Division presented sufficient evidence to shift the burden to defendant to establish his non-culpability. The court relied on Dr. Taragin's testimony that "well establishes that all, but . . . one of the injuries, which was the . . . left tibial fracture . . . required a force that is well beyond that [which] the child could apply to herself."

The court further found the stipulations established Laura was not suffering from any broken bones on February 4, 2016, and had no bruises on that date. The court also explained that the stipulations established that: on February 5, 2016, defendant cared for Laura; on February 6 and 7, 2016, Ann cared for Laura; on February 8, 2016, Ann and defendant cared for Laura; on February 9, 2016, and until 1:00 p.m. on February 10, 2016, defendant cared for Laura; at 1:00 p.m. on February 10, 2016, defendant left Laura with his mother, but by that time Laura had "bruises on her body, face, and was missing hair from her scalp"; Ann picked up Laura at defendant's mother's home around 6:00 or 7:00 p.m. on February 10, 2016; and Laura was in Ann and defendant's care until Laura's injuries were reported to the police the following day, February 11, 2016. The court further noted that on February 8, 2016, Laura was examined at a doctor's office and that there was no evidence Laura showed signs of being injured or impaired by any injuries at that time other than the bruises Ann did not disclose to the doctor.

The court concluded that based on the evidence, stipulations and its findings, Laura suffered non-accidental injuries while in the company of a limited number of adults, and therefore the burden shifted to defendant to prove

his non-culpability.[5]  See In re D.T., 229 N.J. Super. 509, 517 (App. Div. 1988). The court provided defendant and his counsel an opportunity to confer concerning whether defendant intended to present any evidence on his own behalf.

Defendant opted not to testify or present any evidence.  Following the closing arguments of counsel, the court found the Division established a prima facie case Laura was abused.  The court referred to the findings it made at the end of the Division's case and further relied on Dr. Taragin's testimony that Laura's injuries were severe and non-accidental.  The court relied on the parties' stipulations establishing there were limited adults with access to Laura when the injuries were inflicted and otherwise showing defendant cared for Laura on February 8, 9, 10 and 11, 2016.

The court found that under the circumstances presented, the burden shifted to defendant to establish his non-culpability and he failed to sustain that burden. The court entered an order finding defendant abused Laura by inflicting "numerous orthopedic injuries which the [Division's] unrebutted medical expert testimony established were non-accidental," the burden of proof shifted to

---

[5]  The record shows that the Division provided defendant with prior notice that it intended to request that the court shift the burden to him to establish his non-culpability for Laura's injuries.

defendant, who was one of "a limited number of individuals who had contact with the child," and "defendant . . . chose not to testify or offer any evidence of his non-culpability."  This appeal followed.

Defendant presents the following arguments for our consideration:

POINT ONE

THE COURT VIOLATED ITS DUTY TO HAVE READ AND OR VIEWED ALL THE EVIDENCE PRESENTED AS SET FORTH IN <u>R.</u> 1:7-4(a).

POINT TWO

THE COURT ERRED IN RELYING ON A MEMO[] WRITTEN BY THE DIVISION THAT WAS NOT IN EVIDENCE.

II.

We accord deference to Family Part determinations based on its special jurisdiction and expertise in family matters.  <u>Cesare v. Cesare</u>, 154 N.J. 394, 412-13 (1998).  In abuse or neglect proceedings, our review of a trial court's factual findings is strictly limited to determining whether those findings are supported by adequate, substantial, and credible evidence in the record, <u>N.J. Div. of Youth & Family Servs. v. V.M.</u>, 408 N.J. Super. 222, 235 (App. Div. 2009), and we will not disturb the court's factual findings unless "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant

and reasonably credible evidence as to offend the interests of justice," <u>Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974) (citation omitted). While our standard of review is expanded when considering legal implications the trial court drew from established facts, we will "accord deference unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007) (citation omitted). Measured against this standard, we are satisfied there is no basis to reverse the court's findings of fact or determination that defendant abused Laura.

Defendant argues the court failed to make adequate findings of fact as required under <u>Rule</u> 1:7-4(a) and that the court could not have possibly reviewed all of the evidence admitted during the trial prior to rendering its findings of fact and determination he abused Laura. We are not persuaded.

In pertinent part, N.J.S.A. 9:6-8.21(c) provides that an "abused or neglected child" is:

> a child less than [eighteen] years of age whose parent or guardian . . . inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death . . . or protracted impairment of physical or emotional health . . . or impairment of the function of any bodily organ . . . .

A-5287-16T3

Defendant does not challenge the court's finding that Laura suffered serious and non-accidental orthopedic injuries. In his brief on appeal he concedes the ten-month-old child's "injuries [were] not accidental" and argues they were "inflicted by someone else." Defendant contends the court did not make adequate findings supporting its determination that Laura sustained the injuries while in his care and he is responsible for inflicting the injuries and thereby abused the child.

We find no merit in defendant's contention because it is undermined by the record. Although it is the Division's burden to prove abuse by a preponderance of the evidence, N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 22 (2013):

> proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or guardian shall be prima facie evidence that a child of, or who is the responsibility of such person is an abused or neglected child . . . .
>
> [N.J.S.A. 9:6-8.46(a)(2).]

Where, as here, "there is limited access to a child in a Title Nine litigation, especially an infant, the burden shifts to those with access to prove non-culpability." N.J. Div. of Child Prot. & Permanency v. C.J.R., 452 N.J. Super. 454, 472 (App. Div. 2017). Thus, "once a prima facie case [of abuse or neglect]

has been established, the burden shifts," ibid., and defendants "having access or custody of [the child] during the time frame when a[n] . . . abuse . . . occurred," ibid. (third alteration in original) (quoting D.T., 229 N.J. Super. at 517), "are required to come forward and give their evidence to establish non-culpability," ibid.

The court made findings of fact supporting its determination defendant abused Laura. The court found the Division established a prima facie case of abuse based on Dr. Taragin's testimony Laura suffered numerous and significant non-accidental orthopedic injuries in the days immediately preceding February 11, 2016, a period during which other evidence showed a limited number of people, including defendant, had access to her. The court further expressly noted the parties' stipulations established defendant had access to the child, almost exclusive access, on the critical days Laura's serious injuries were inflicted and first discovered. We are satisfied the court fulfilled its obligation to make findings of fact, R. 1:7-4, supporting its determinations the burden shifted to defendant to establish his non-culpability, D.T., 229 N.J. Super. at 517, and he failed to sustain his burden.

Defendant's contention that the court failed to consider all of the evidence is without sufficient merit to warrant discussion in a written opinion. R. 2:11-

13

3(e)(1)(E). We add only that the court's findings reflect that it was fully familiar with the evidence, and defendant otherwise fails to identify any evidence he contends the court ignored or failed to consider that warrants a reversal of the court's abuse finding.

We also reject defendant's contention that the court erred by relying on the document containing the parties' stipulations because it was not admitted in evidence. Defendant was provided with the document prior to the start of trial, and it was reviewed in detail by the court with the parties to determine the agreed upon stipulations. Defendant does not dispute the document accurately reflects the agreed upon stipulations, and any error in not marking the document as an exhibit for identification is harmless, R. 2:10-2, because the document is now part of the record on appeal. Indeed, defendant did not oppose the Law Guardian's motion to supplement the record on appeal to include it.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION